Windsor *et al.* *vs.* Bell, executor.

1. By will, made and probated in 1856, the testator gave directly to his daughter, then a child, the residue of his estate, real and personal, "to her own proper use and benefit, and to the heirs of her body, free from the disposition of any husband that she may ever have, not to be subject to contracts, debts or liabilities of any husband she may have." This created in the daughter a separate estate. A person who was her husband in 1868 (having married her in November, 1866), had no right, as husband, to settle with the executor and receive and receipt for her legacy. As he acted for himself, and not as her agent or trustee, she was not bound by his receipt, nor affected thereby. In the record, there is no decisive evidence of ratification by her. Indeed, she could not ratify, so far as her separate estate was used to extinguish her husband's debt.

2. An executor who qualified in 1856, having recognized the trust and acknowledged assets as late as 1868, and the legatee having been a minor until after the latter year, her action, brought in 1876, for not paying over the legacy, was not barred by the limitation act of 1869, nor by the Code.

3. When it was an executor's duty to pay, and he neglected it, it is the duty of his executor to pay in his stead, if sufficient assets came to the latter, either from the original estate or from the estate of the first executor. The second executor is answerable directly to the person (in this case, the legatee), to whom the payment should have been made.

4. In a suit against the executor of the deceased representative of an estate, the deceased representative being misdescribed in the declaration as administrator, it is competent to amend by changing the description to executor, instead of administrator.

5. A declaration for the wife's legacy being in the name of husband and wife as joint plaintiffs, it may be amended by inserting words to the effect that they sue for the wife's use. The wife is the only essential plaintiff, and the case should be tried as if she were sole plaintiff, the joinder of the husband being matter of form.

Husband and wife.　Statute of limitations.　Executors and administrators.　Amendment.　Before Judge WRIGHT. Webster Superior Court.　March Adjourned Term, 1878.

In August, 1876, Windsor and his wife Josephine, brought complaint against Bell, as executor of the estate of Sampson Bell, deceased, for $4,634.78, besides interest, which they alleged said Sampson Bell, as administrator of the

estate of Eason B. Sweeny, the father of said Josephine, became indebted to the said Josephine as the sole heir-at-law of said Sweeny. The defendant pleaded the general issue, the statute of limitations and settlement.

At the September term, 1877, the plaintiffs moved to amend in the following particulars :

1. By making the suit proceed for the use of Josephine Windsor.

2. By alleging that Sampson Bell was the executor of the last will of Sweeny, deceased, instead of administrator.

3. By charging the said Bell not only as executor of Sweeny, but also as testamentary guardian of the said Josephine.

These amendments were allowed over the objection of defendant, Judge Crisp then presiding, and exceptions *pendente lite* filed.

When the case came on for trial on the merits, the plaintiffs introduced the will of Sweeny, which, after making certain specific bequests, gave the entire residue of his estate to the said Josephine, in the manner indicated in the first head-note, and appointed the defendant guardian of her person and property, directing that he should give special attention to her education.

Also, the records of the court of ordinary, which established the appointment and qualification of Bell as executor, and his last return, made June 7th, 1858, which showed the balance sued for in his hands.

The plaintiff Richard S. Windsor testified, in substance, as follows: My wife, Josephine, was Sweeny's daughter. Married her in November, 1866. She was Bell's granddaughter. Have known her since 1858; she was then six or seven years old—too small to go to school. Had a settlement with Sampson Bell in right of myself but not of my wife, as appears from receipt. Received title to certain lands and $801.81 in money in settlement. Have all the lands yet except two parcels, one of which I sold for $300.00, and the other my wife sold for $65.00 on a credit.

At the time of settlement referred to, I did not know that my wife had any interest in the estate, but believed it all came to me. Did not know until the last term of the court that Bell was executor. The money received by me went to pay the firm debts of Windsor & Jowers, of which I was a partner. These debts were held by Bell. I and my family lived principally out of the store of Windsor & Jowers; treated it as I would any other money belonging to me, not recognizing my wife's right to it as her separate estate.

It was admitted that Sampson Bell died March 6th, 1875.

The receipt referred to was as follows :

"GEORGIA—WEBSTER COUNTY:

"Received, May 14th, 1868, of Sampson Bell, executor of the estate of E. B. Sweeny, late of said county, deceased, $801.81, and titles to the following lots of land, to wit: * * * All of which I received from Sampson Bell, executor, in right of my wife Josephine Florence, in full, entire and complete satisfaction of all the rights, titles and interests, property claims or demands, I have, or might have, in and upon the estate, real and personal, of E. B. Sweeny, deceased, and my wife's father. And said Sampson Bell, executor as aforesaid, is hereby fully and entirely discharged and acquitted of any and all further claims on my part upon said estate. In testimony whereof, etc.

(Signed)                    R. S. WINDSOR."

Here plaintiffs closed, and defendant moved for a non-suit, because the evidence showed that the action was barred, and also a final settlement.

The court stated that if counsel for plaintiffs so desired the motion would be overruled, but that he would instruct the jury that the plaintiff Josephine, was bound to sue within four years after she attained her majority, and not having done so, her right of action was barred. Under this ruling plaintiffs submitted to a non-suit, filed their bill of exceptions, and assign said ruling as error.

S. C. ELAM ; COOK & HOLLIS, for plaintiffs in error, cited Code, §§1847, 2922, 2926 ; 45 *Ga.*, 458 ; 57 *Ib.*, 459 ; 15 *Ib.*, 122 ; 29 *Ib.*, 67 ; 31 *Ib.*, 203.

W. A. HAWKINS ; THOMAS H. PICKETT, for defendant, cited

Williams on Ex., 254, 959, 1796, 1399; 14 Gray, 118; 9
Pick., 395; Dicey's Parties, 49; 17 Md., 403; 16 M. & W.,
451; 9 Abb. Pr. R., 109; 2 Edward's Ch., 336; 57 *Ga.*,
412; 34 Maine, 340; 13 Pick., 328; 50 *Ga.*, 384; 57 *Ib.*,
204.

BLECKLEY, Justice.

1. The will created a separate estate in the testator's
daughter, and on her marriage, in November, 1866, no mar-
ital rights attached in favor of her husband as to this prop-
erty. The husband's settlement and receipt did not bind
her. He acted in his own assumed right, supposing that
his marital rights had attached, and not as her agent or
trustee. The record indicates that in the settlement which
he made with the executor, the husband used some of these
assets to extinguish his own debt. Of course, she could not
ratify the settlement as to that element, (*Chappell vs. Boyd*,
this term); and, besides, the record contains no decisive
evidence of any ratification by her whatever. To any effect-
ive ratification, a knowledge of her legal rights would be
necessary, since she did nothing to bring about the mistake
under which her husband took the position of owner which
belonged to her. 40 *Ga.*, 181.

2. The executor qualified in 1856. In 1868 we find him
still in the trust of executor, and recognizing its existence;
for his settlement with the husband in that year was in that
character and embraced assets with which he conceded him-
self to be chargeable. The legatee, Mrs. Windsor, was then
a minor. She brought this action in 1876, and the cause of
action alleged is not a *devastavit* committed prior to June,
1st, 1865. As we construe the declaration, it is simply an
action for not paying over her legacy, and does not necessa-
rily reach back, so as to fall within the limitation act of
1869. The Code gave her ten years after arriving at age.
Sections 2922 and 2926. We think this, and not the act of
1869, applies to the case. It does not appear that as her

guardian or trustee he ever charged himself with her legacy so as to become discharged in the character of executor, and there is no suggestion that she had any other guardian. The proper time for him or his representatives to have paid over her legacy to her was on her arrival at twenty-one years of age.    Until then, she was an infant, and not competent to receipt for it.    Her real complaint ought to be, (and we think the declaration does not affirmatively set forth a different one), that her legacy was withheld after she arrived at majority.    If the suit was for something done or omitted prior to June 1st, 1865, the act of 1869 might bar it.    We need not say that it would, though such is my individual opinion.    The declaration is far from satisfactory in respect to certainty in the element of time.    It ought to be more specific, but it is amendable.    Giving it a liberal construction, we hold that the act of 1869 does not apply to it ; nor do we know of any four year statute which applies.

3. The executor having died leaving an executor, the action is against the latter, not in his character of executor by representation of the first estate, but in his character of executor of the first executor.    It is objected that the first estate should be represented before the court.    If that be necessary, we think the defendant may represent it sufficiently without being more specifically charged than he is in this declaration.    The facts appear on the face of the declaration, and the defendant's connection with the original estate is deducible from them with certainty as a legal conclusion.    He is answerable directly to the legatee for her legacy to the extent of the assets with which the first executor was chargeable ; and it makes no difference to the defendant, so far as it now appears, whether these same assets have come down to him, or whether they are to be accounted for out of the assets which have come to him from the estate of his immediate testator.    If he has the means of paying the legacy which the first executor ought to have paid, whether he has derived them from the one estate or the other, or partly from each, is a matter of indif-

ference to the legatee. And the defendant himself cannot suffer, for when he has exhausted legally the assets from both estates which have, or may come to his own hands, he will have discharged himself from further accountability.

4. The amendment to the declaration by which the mis-description of the deceased executor was corrected, the mistake being in denominating him administrator instead of executor, was allowable. Why not?

5. The joinder of the husband with his wife as plaintiff, was matter of form, and there was no error in allowing the declaration amended so as to make it appear that the suit was for her use. She is the only necessary plaintiff, and the case should be tried just as if she were the sole plaintiff.

Judgment reversed.